I have to hurry. Good morning. Good morning. May it please the court, Louis Gordon on behalf of the petitioner Gustavo Tejeda. I'd like to reserve four minutes for rebuttal. You have kind of a low voice. Can you hear him OK, Judge Tristani? Yes. OK, good. I can hear him. Good. I would like to reserve four minutes for rebuttal. OK. Mr. Tejeda is a native and citizen of Mexico who received a green card in 2007. And in 2012, he suffered a conviction under the California Health and Safety Code, 11-550-A. 11-550 is the straight word to say that for anyone that ever dealt with that. So I think we know what the facts are here. But so we previously found that California controlled substance offenses. We found them to be divisible. So why should we treat 11-550 differently? OK, so this court directed additional briefing based on Martinez-Lopez. Right. And the answer to your question is the actus reus portion of this case, of this statute, has only two disjunctive phrases, use or being under the influence. And anyone who's under the influence has used a substance. And I would argue that someone who uses a substance, given that this statute's about addicts, is also under the influence. So therefore, statute is not divisible. And under Mathis, the Supreme Court said that, yes, you should look to definitive California law. But you can also look to the statute if, on its face, it answers the question. Well, I understand your argument to be that a particular drug is but a means to committing the offense. So when I look at the jury instruction there, it says we look to the jury instructions in determining whether a statute is divisible. How do you square that argument with the jury instruction for 11-550, which provides a blank for the specific controlled substance? So I think that cuts against you. It would cut against us on the controlled substance portion, but not on the actus reus portion of our case. I understand the controlled substance problem that you have. If you read the statute so that some jurors could think it was amphetamine, some could think it was cocaine, and the instruction basically said it doesn't matter, either will do. So you don't have to be unanimous. Then you have a statute that's not divisible, and you can't treat it as divisible under controlling Supreme Court authority. But here, you don't have that. Now you're talking about the use or be under the influence, and I don't understand your argument on actus reus. Well, if anyone who's under the influence I think some jurors could think you use it. You're under the influence of amphetamines. I believe it's the same crime. But why does that matter? It is the same crime, because it's not divisible, and then you wouldn't go to the modified categorical approach. And if it's categorically not divisible. But why does it matter? What matters with divisibility is if suppose you had the state criminalizing amphetamines and coffee, and a jury could convict if six of them thought the person had used amphetamines, and six of them thought he'd used coffee for caffeine. That's six people thinking he did something that doesn't fit what the federal law requires. But for use or be under the influence, I don't see why it wouldn't, since you can't be under the influence, as you said, without having used. So my argument is that there's two prongs, right? In Martinez-Lopez, they also dealt with both an actus reus and the controlled substance. Under the actus reus, one crime, and it's not divisible, it's not a categorical match to the CSA. That would be the, that's the argument. Now, as far as the controlled substance, Martinez-Lopez says definitive California law. That's an en banc decision, and it goes to the California case of people versus Adams, which the dissent in Martinez-Lopez argues is not definitive California law. There's a lot of disagreement about it. Dissent argues that it wasn't used by California courts in determining many California issues. So therefore, it should be certified to the California Supreme Court. But as far as the, but it's, you know, there's a difference between the statute in Martinez-Lopez and the statute here, because there's 14 different ways in Martinez-Lopez to, or 14 different disjunctive phrases there. Here, in this use or being under the influence, there's only two. And that's, and I'm arguing that they are indeed one crime. Now, there's also a couple other arguments that I wanted to raise before the court. One has to do, if you went to the modified categorical approach, I think that the statute itself, count two, that's page 88 in the record, actually lists this as use, lists them under the count as use and being under the influence. Let me back up a minute. OK. So what is the federal crime that the California crime has to fit within? Did it say use or be under the influence, or what does it say? It's the, the way they have it under section 844 is on penalties for simple misdemeanors, which would be the closest fit. Now, the plain language. Hold on. Let me make clear what I'm trying to ask you, because I obviously did not make my question clear before. The whole point of this analysis is to make sure that somebody doesn't suffer the federal penalty for something that wouldn't be a federal crime. So the point of my coffee example was the guy might have just had a cup of coffee, and that's not a federal crime, even though some state might treat it as a crime. That's why it really matters whether it's divisible and whether 12 jurors had to agree on cocaine rather than coffee. But in this case, being under the influence means he had to have used it. But I don't understand why that's broader than the federal crime, so it could include somebody who's guilty under state law but not under federal law. Well, under the state law, it just says use or being under the influence. And I believe under the federal law, there's a mens rea, at least in the federal statute, of knowingly using. Does the federal statute says use or be under the influence, or does it just say knowingly use? It's unlawful for a person to knowingly or intentionally possess controlled substance. So I think that it could be broader. I mean, the state crime could be broader than the federal. Oh, you're saying somebody could be under the influence. Right, somebody could. Without knowingly or intentionally. Right, at least that's the. But then, don't you get into the next question as to whether it's realistic that under a California law, they would be convicted of knowing and using, I mean, using or being under the influence when they were drugged by somebody? I mean, if you're hypothesizing that there is a broader California law, it has to be within the realm of realistic possibilities. So do you come forward with a case that shows you can be convicted under the statute without knowing what you're doing? I don't have, I'm not aware of a California case on that point. Where that's happened? Where that's happened. So how does the so-called Sullivan rule inform our analysis of whether the statute is divisible? So then, under the Sullivan rule, you wouldn't need unanimity. And therefore, it would point to means rather than elements, which is what was the longstanding California rule, that different ways, different disjunctive phrases are different ways to commit the same crime, rather than being elements of different crimes. The problem, as I think we argued in our briefing,  although people versus Sutherland post-date Adams. So if you were to follow the longstanding California rule rather than Adams, you would find it to be means and not to be elements, although the court has relied on Adams. Now, there is another. Does this survive Martinez-Lopez, this argument? So I think the question is, does it survive Mathis, actually? Because Mathis would say that you have to have looked to the jury, to the unanimous jury, and also to definitive state law. But Mathis is telling us to go in two ways. It's telling you to look at the state law, but then it's also telling you that what the- Seems it would be hard to find 1155 indivisible without chipping away at the reasoning undergirding the court's prior decisions, that it's an easier push uphill with the prior decisions. But I know you wanted to save time. Right, I do want to save time. So why don't we hear from the government, and then you can respond to if you've got something to poke holes in when you come back. Thanks. Good morning. May it please the court. Jeffrey Liest, appearing on behalf of the Attorney General. So maybe it might be logical to just start with Martinez-Lopez, where we observed that California defendants are routinely subjected to multiple convictions under a single drug statute, where the crime involves more than one controlled substance. Are you aware of any such convictions under 11550? I'm not, Your Honor. OK. This court, post-Martinez-Lopez, has repeatedly applied the logic of Martinez-Lopez to other statutes. And it's just basically said that, in Acampo-Estrada, it said that a simple extension of the logic in Martinez-Lopez results in a conclusion that is similarly structured but different statute is divisible. And that's what we have here. That seems pretty solid on the amphetamines part of the argument. I'm kind of curious about this argument, where I just missed it in the briefs, I guess, where, for federal law, you have to knowingly and intentionally possess the amphetamines. And under state law, it's enough to just be under the influence of amphetamines, like a medical doctor didn't prescribe them. I don't think that that's accurate, Your Honor. For here, what we're looking at is whether or not, under the 237A2BI, whether the offense relates to a controlled substance. So there's no knowledge requirement that are just looking at the state statute and whether that meets the definition that fits with the federal ground of removability. The Actus Reis argument, raised in this elemental briefing, has never been an issue in these entire proceedings. It's always been about the divisibility and whether or not the controlled substance at issue was divisible. So you're saying it was a brief, and that's why I missed it. That very well could be true. So this case started before Martinez-Lopez, right? And then it happened in the interim, and then we asked you to address it. Is that correct? Correct. Yeah, so this is a pretty old case. This is a 2014 case. Martinez-Lopez was a 2017 decision. He did mention this Actus Reis business in his supplemental brief. Correct. Because there was an Actus Reis portion of Martinez-Lopez, although it was a different issue. Right. So he did mention it in his supplemental brief when we asked him to address Martinez-Lopez. Correct. But it was never raised before the agency. It was never raised in the opening brief. The entire argument from day one is always related to the controlled substance itself, and never the Actus Reis requirement. Well, Martinez-Lopez made that argument more difficult. So it's like, I guess, I can't fault someone for shifting. Even if the court were to allow the argument, it's really of no moment, because the divisibility analysis only comes in if the statute is overbroad. Here we have use and be under the influence. What if you were under the influence unintentionally? For example, you went to a bar with somebody who drugged your drink. I think that that would go to an affirmative defense at the criminal proceedings. If you had a lack of criminal intent, I've never seen that as an affirmative defense. Well, under 1150A, I believe there's Men's Rea is ordinarily an element of the crime. Right. I don't know that that's actually the case in this particular statute. I know that there are defenses you can raise for if it's been something that's been prescribed by a doctor. Look, wait a minute. We talked over each other. You started answering before I finished asking. So we each missed some words of the other. What I'm asking about is, why wouldn't the California statute be broader than the federal statute in the elements it requires if somebody could be under the influence, though not intentionally, so for the California statute, but under the federal statute, he would not be guilty of the crime unless he intentionally ingested the amphetamines? Again, I think that would go to. You say it's an affirmative defense. And that's where you lost me, because I've never seen Men's Rea raised as an affirmative defense. I've always seen it approved by the government. Yeah, Mr. Honor, this is something that wasn't addressed in the briefing, so I don't really know enough about the California law. I mean, I just know that for the actual ground of removability, it just relates to a controlled substance. Well, I think the best answer to that comes from what Judge Rustani said in terms of, you can't just come up with anything that could possibly happen. You have to come up with things that, I mean, there has to be some tethering to that. And I think that's why the question was asked whether counsel for the appellant was aware of any cases where people had been convicted of 11-550 when it was unintentional, and he said he was not. So when you look at it, we have to look at it. It has to be maybe a little more than just a law school possibility out there. I mean, if there's really some likelihood that that could happen, and we could really see it, or there are examples of where it would happen, we have to look at that pretty seriously. So I think that's what Judge Kleinfeld is saying. If that were, in fact, the case. That's my concern. I know that there's been a kerfuffle in the newspapers for the last few years about state-run drugs being delivered to somebody in a drink so that they become under the influence of these drugs unintentionally. And I haven't heard of anything like that for amphetamines, but the fact that I haven't heard of it isn't worth much. What I want to know is, just what Judge Rustani asked you, is that a realistic possibility? I've never heard of it, Your Honor. It seems that if it was picked up by the police, and that was the reason they gave, that the police would probably take that into consideration in prosecuting. But I'm not aware of any case where someone has been, you know, a date-rape drug kind of situation. We're just not very straight on this panel here. I can see that. We're kind of ignorant of a lot of things that low-lifes do. I'm thinking if a guy said, I didn't take any amphetamines of any kind, and he's climbing the walls and acting like somebody really high on amphetamines, the cop's not going to believe him. He's going to prosecute. Prosecutor's not going to believe him. He's going to prosecute. Jury's going to convict. But if anyone, because somebody thinks that it would be a cute trick, I don't even know how you take them. I'm not sure, Your Honor, how you take them either. I've heard of greenies being pills that you can take. But I have no idea. What does the jury instruction for 11-550 say about that? Have it? 11-550, it does? Yeah. I don't have it in front of me. I don't know if it has any specific reference to any kind of knowledge requirement. I know that there's some. I just looked, and I couldn't find it. I have it in front of me. I'll read it to you. A person shall not use or be under the influence of any controlled substance that is in these various subdivisions, except when administered by or under the direction of a person licensed by the state to dispense, and so forth. That's what it says. Well, I have a couple of things on the, I'm looking at, I don't know if I have criminal jury instruction 2400. And the second part of it said that the instruction reads in relevant part, the defendant is charged with law, and the controlled substance listed in health and safety code 11-550. To prove the defendant is guilty of this crime, the people must prove that. And one of the things, the defendant was willfully and unlawfully under the influence of blank, a controlled substance, and he or she was arrested. I would think that the willfully would be. Well, it seems that it might cover that. Covering at least part of it, yes. OK, you alluded to the fact that this actus reus argument was not made to the BIA. So are you saying there's a jurisdictional problem or a failure to exhaust problem? Yes, Your Honor. I mean, this is, the actus reus has never been challenged before the agency, so it wasn't exhausted. But to the extent, even if it had been exhausted because of Martinez-Lopez kind of changing the calculus, and this court has already looked at this particular California statute. In Flores-Ariana, which Judge Reinhart held of the ordinary meaning of the phrase, any law relating to a controlled substance encompasses use and being under the influence. So this court's already looked at the actus reus and found that use and an influence, they both meet the requirement. There is no divisibility between the two. How do you actually think or use or make yourself under the influence of amphetamines, assuming you want to? How do people consume them? I believe they come in pills. I'm not sure if they're injectable. I really don't know. I've never done amphetamines myself. Well, that's self-serving. OK. Did you have anything additional or any other questions? The court's covered the other points I wanted to make. Thank you. Thank you. All right, you have about three minutes. So what about that jury instruction? It seems to say willfully and unlawfully. That doesn't, that would not give rise to a situation where someone that was roofied or similar methamphetamine D, that it seems like you're coming up with that hypothetical that just would never happen. Well, I'm not sure that exactly matches the federal statute. So there's that argument. But somebody could wind up using amphetamine. And if he's arrested and under the influence, or he's given amphetamine, you're arrested under the influence, it's extremely difficult to show that it was inadvertently taken. So that's how I would. My question about consumption was to find out whether it was realistic to think that amphetamines could be taken without knowledge that they were taken. I think that it's realistic that somebody could give you an amphetamine. You could take it and be under the influence and be arrested for it. Well, you knowingly did. He says, here, try this. This is an amphetamine. But I don't know if this is a proximate use, like a date-rape drug, or otherwise somebody could consume it unintentionally and unknowingly. Put into some portion of some edible food and consumed. So there's a realistic possibility as long as it imbibes some type of substance and it could be in there, be under the influence, and still be convicted. I don't think it's completely unrealistic as far as that goes. The one other thing that I did want to mention just briefly is the- The jury instruction. Why doesn't the jury instruction to the jury telling him if he didn't do it willfully, he's innocent, you have to acquit him? Why isn't that enough to say this? Because Mathis also says that you can look at the statute itself. Statute definitively answers the question. So that's how I would- Doesn't it say to look to both? It says you should look to the jury instructions, but it says if we can answer the question on the statute itself is my recollection of the wording of Mathis, then it could be resolved based on the statute. So the jury instruction is not part of the statute. And you could resolve this just based on the plain reading of the statute. OK. Well, you're in overtime now, so thank you both for your argument. This matter will stand submitted.
judges: Kleinfeld, Callahan, Restani